IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADRIANE STREIFF | * | |
| v. | * | Civil No. CCB-13-845 |
| ANNE ARUNDEL COUNTY BOARD OF EDUCATION | * | |

******

## MEMORANDUM

Plaintiff Adriane Streiff brings this suit against defendant Anne Arundel County Board of Education ("the Board" or "BOE"), claiming retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203 *et seq.*, and the First Amendment to the United States Constitution. Now pending before the court is the Board's motion to dismiss, or in the alternative, for summary judgment. The issues in this case have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2011). For the reasons stated below, the motion to dismiss, or in the alternative, for summary judgment—construed as a motion for summary judgment—will be granted in part, as to Streiff's First Amendment claim, and otherwise denied.

## BACKGROUND

Streiff's daughter, A.S., suffers from a learning disability known as Executive Function Disorder. (Compl., ECF No. 1, at ¶ 12.) As a result of her disability, A.S. has difficulty comprehending oral communication and expressing herself. (*Id.*)

In 2008, Streiff began volunteering as a lunchroom monitor at Benfield Elementary School ("Benfield"), where A.S. attended school. (*Id.* at ¶¶ 11, 16–17; *see also* Aff. of Florence G. Bozzella, ECF No. 14-2, at ¶ 4.) In September 2009, Streiff was invited to apply for a substitute teaching position. (Compl. at ¶ 20.) When she applied, she indicated her willingness to substitute at Benfield and two other schools. (Aff. of Bozzella at ¶ 4.) Streiff was hired as a long-term substitute teacher and placed on Benfield's substitute teacher list. (Compl. at ¶ 20.) On April 15, 2011, however, then-Principal Terri Sacchetti informed Streiff that a complaint had been filed against her, and she should not report to work that day. (*Id.* at ¶ 59.) Employee Relations informed Streiff on May 10, 2011, that she was terminated from her positions of lunchroom monitor and substitute teacher at Benfield. (*Id.* at ¶ 71.) According to the Board, even though Streiff was removed from the list of available substitute teachers at Benfield, she remained on the list of available substitute teachers for other schools. (Aff. of Bozzella at ¶ 6.) The Board maintains that, after her termination from Benfield, she was called on at least six separate occasions with offers of substitute teaching jobs at other schools; however, she turned down each of those offers. (*Id.* at ¶ 7.) The Board also claims that Streiff did not experience any change to her earning capacity, nor did she lose any benefits. (*Id.* at ¶ 9.)

According to Streiff, the decision to remove her from the list of available substitute teachers at Benfield was in retaliation for advocating for her daughter's educational needs. In October 2010, Benfield terminated language support for A.S., determining that she was no longer eligible for an Individual Education Plan ("IEP"). (Compl. at ¶¶ 26–27.) Streiff objected to the change in accommodations, but Benfield proceeded "unilaterally" to place A.S. on an Alternative Intervention Strategies ("AIS") Plan, under which she did not receive "speech and language supports for difficulties in oral and written expressive language." (*Id.* at ¶¶ 29–32.) In

the subsequent months, Streiff reached out to A.S.'s teachers for assistance with implementing the AIS Plan, but her requests went unanswered. (*See id.* at ¶¶ 38–40.) By December 2010, Benfield still had not complied with the requirements of the AIS Plan. (*Id.* at ¶ 42.) On March 29, 2011, Streiff and her husband had a meeting at Benfield and requested that A.S. be provided with specific language supports. (*Id.* at ¶ 52.) Although the school consented to "direct language services" for A.S., the services were not provided. (*Id.* at ¶ 54.) Streiff maintains that, while she tried to advocate for her daughter's educational needs, "she was shunned and ostracized by A.S.'s teachers." (*Id.* at ¶ 48.) She reported the teachers' behavior to Principal Sacchetti, but nothing was done to respond to her complaints. (*Id.* at ¶ 55.) On April 8, 2011, Streiff expressed her desire to report the teachers' behavior to the BOE. (*Id.* at ¶¶ 56–57.) Streiff alleges that this information was relayed to Principal Sacchetti, following which she was informed of the complaint against her, told not to report to work, and eventually removed from the list of available substitute teachers at Benfield. (*See id.* at ¶¶ 58–59, 61, 71.)

According to the Board, the decision to remove Streiff from the list of available substitute teachers at Benfield was not based on her advocacy for her daughter, but rather stemmed from conflict between her and other Benfield employees. (Aff. of Bozzella at ¶¶ 5, 8.) The Board maintains that she "verbally accost[ed] a[] [Benfield] employee at that employee's church and show[ed] up to that employee's home uninvited." (*Id.* at ¶ 5.) In addition, Streiff "confronted and verbally accosted [another] employee at a local grocery store, as well as at Benfield Elementary." (*Id.*) The Board filed the pending motion to dismiss, or in the alternative, for summary judgment prior to the close of discovery. (*See* Decl. of Hnin N. Khaing, ECF No. 17-2, at ¶ 9.)

**STANDARD**

The Board has moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Streiff had adequate notice that the Board's motion might be treated as one for summary judgment. The motion's alternative caption and attached affidavit are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260–61. Moreover, Streiff referred to the motion in her opposition brief as one for summary judgment. Although Streiff attempted to invoke Rule 56(d) by submitting a declaration that she has not had adequate time for discovery, the declaration is insufficient. The declaration makes the bare assertion that "Plaintiff lacks admissible evidence to

support her opposition to Defendant's Motion for Summary Judgment." (Decl. of Khaing at ¶ 9.) It does not describe the evidence Streiff seeks to obtain, nor does it explain why facts precluding summary judgment are not available. *See* Fed. R. Civ. P. 56(d) (indicating that the nonmovant must offer "specified reasons" why she "cannot present facts essential to justify [her] opposition"). For example, Streiff does not explain what facts are needed to respond to the Board's argument that she has not suffered an adverse employment action, and it does not appear that discovery would reveal any information not already known to Streiff. Indeed, commonsense suggests that Streiff does not need discovery to know whether she was terminated from her job, suffered a change in compensation, or lost a benefit. Therefore, the court will consider the affidavit submitted by the Board and will treat the Board's motion as a motion for summary judgment.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore*

5

*Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

## ANALYSIS

The Board claims that Streiff's complaint must be dismissed because she did not suffer an adverse employment action. To make a prima facie case of retaliation under the ADA and the Rehabilitation Act, the plaintiff must show: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse action. *See Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391–92 (4th Cir. 2001); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001). In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court explained that, to make a claim of retaliation, the employee "must show that a reasonable employee would have found the challenged action materially adverse." 548 U.S. 53, 67–68 (2006). An adverse employment action need not be termination, but rather may be an action that adversely affects the terms or conditions of employment so as to cause a "significant detrimental effect." *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). Moreover, an adverse employment action "is not limited to discriminatory actions that affect the terms and conditions of employment," but rather may be an employer action that "dissuade[s] a reasonable worker from making or supporting a charge of discrimination." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011).

The Board's affidavit, attached to its dispositive motion, clarifies that Streiff was not "terminated" from her substitute teaching position; instead, she was removed from the list of

6

available substitute teachers at Benfield, but remained on the list of available substitute teachers at other schools within the school district. Indeed, Streiff was offered at least six substitute teaching jobs following the decision to remove her from the list of available substitutes at Benfield. Streiff did not experience any change to her earning capacity; any loss of income she might have experienced was due to her own decision to decline offers of substitute teaching jobs at other schools. Nevertheless, the court cannot decide on this record that, as a matter of law, Streiff's removal from the list of available substitutes at Benfield was not an adverse impact. Streiff's removal from Benfield did not simply make her role less appealing or convenient. *See James*, 368 F.3d at 376; *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002). Rather, the Board's action meant that she could no longer teach at her daughter's school, an action that a reasonable person in her position may have found "materially adverse," particularly because her daughter has special needs. The Board's motion for summary judgment, as to Streiff's claims under the Rehabilitation Act and the ADA, will be denied.[1]

According to the Board, Streiff also cannot maintain a claim for retaliation in violation of the First Amendment because she was speaking about a matter of personal interest, not public concern. To determine whether a public employee has stated a First Amendment claim for retaliation, the court considers: (1) "whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest;" (2) "whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in managing the working environment;" and (3) "whether the employee's speech was a substantial factor in the employee's termination decision." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (citations and internal quotation marks omitted). As to the first

---

[1] The Board does not at this time request—nor does the court endeavor to provide—any ruling as to its purported justification for removing Streiff from the list of available substitutes at Benfield.

consideration, an employee speaks about a matter of public concern when her speech "involves an issue of social, political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc). By contrast, "[p]ersonal grievances" and "complaints about the conditions of employment" are matters of personal interest. *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).

Here, Streiff's speech focused on the specific needs of her child, her objections to her daughter's educational plans, and the failure of her daughter's teachers to implement those plans. In Streiff's complaint, all the alleged protected activities concern her daughter: "(1) repeated requests for language support for her daughter under the IEP Plan, (2) repeated requests for proper implementation of her AIS Plan, (3) repeated requests for meetings[,] (4) repeated requests for a 504 Plan, (5) objections regarding teachers' failure to properly implement special education plans, and (6) intention to report to BOE." (Compl. at ¶ 102.) Streiff's advocacy for her daughter, although admirable, does not represent advocacy for other children, nor does it represent an effort to challenge a broader BOE policy.[2] The court therefore concludes that Streiff's speech concerned personal matters, and her First Amendment claim will be dismissed.

Finally, the Board requests summary judgment declaring that it enjoys Eleventh Amendment immunity for claims over $100,000. According to Streiff, however, the Board has waived Eleventh Amendment immunity under 42 U.S.C. § 2000d-7 by receiving federal funds.

---

[2] Streiff's assertion that she wanted to go to the BOE "to report Benfield's inability to properly implement *children's* educational plans" is belied by numerous statements of advocacy for her daughter only. (*Compare* Compl. at ¶ 56 (emphasis added), *with id.* at ¶ 1 ("advocating on behalf of her child, A.S."); *id.* at ¶ 102 ("her objections with respect to her daughter's education plans"); *id.* at ¶ 104 ("Plaintiff's expression of disapproval regarding her daughter's educational Plans and the teachers' failure to make proper implementation of the educational plans").) There are no facts to support the claim that she advocated for any child other than her own.

The Board does not respond to Streiff's argument in its reply brief. The court will resolve this issue at a later date.

## CONCLUSION

For the reasons stated above, the Board's motion to dismiss, or in the alternative, for summary judgment—construed as a motion for summary judgment—will be granted in part, as to Streiff's First Amendment claim, and otherwise denied. A separate order follows.

November 25, 2013 /s/
Date Catherine C. Blake
United States District Judge