**fIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ADRIANE STREIFF               :
:
:
        v.                          :    Civil No. CCB-13-845
:
:
ANNE ARUNDEL COUNTY      :
BOARD OF EDUCATION        :

**MEMORANDUM**

Adriane Streiff sues her former employer, the Anne Arundel County Board of Education ("Board"), alleging the Board terminated her employment as a lunch/recess monitor, limited her employment as a substitute teacher, tolerated the rude conduct of her co-workers, and neglected her concerns about the treatment of her daughter in retaliation for asserting her daughter's entitlements under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. § 790–794f.  The Board now seeks summary judgment on the grounds that Streiff has not made out a prima facie case of retaliation and that, even if she had, the Board's actions were justified by Streiff's harassment of her co-workers.  That motion has been fully briefed and no hearing is necessary to its resolution.  *See* Local Rule 105.5 (D. Md. 2014).  For the reasons explained below, that motion will be granted.

**BACKGROUND**

The Benfield Elementary School operates under the control of the Board.  (*See* Mot. Summ. J., Ex. 6, Bozzella Aff. 1, ECF No. 30-8.)  Streiff was the parent of A.S., a student at Benfield.  (*See* Mot. Summ. J., Ex. 1, Streiff Dep. 27.)  She also served both as a lunch/recess monitor and, when needed, as a substitute teacher.  (*See* Streiff Dep. 10–11, 15–16.)  A.S.'s

1

education was guided by an individualized education plan ("IEP") administered by the Board. (*See* Streiff Dep. 82–83.)  That IEP initially included what Streiff describes as "language support."  (Opp. Mot. Summ. J., Ex. 1, Streiff Aff. 3, ECF No. 37-2.)

In October 2010, however, the Board informed Streiff that it would be substituting for A.S.'s IEP an alternative educational plan that lacked language support.  (*See* Streiff Dep. 83–84; Streiff Aff. 3.)  Streiff objected to that decision at the meeting at which it was finalized.  (*See* Streiff Dep. 84.)  In the months that followed, she expressed concern about A.S.'s education to two of A.S.'s teachers, Lynn Skallos and Susan Linthicum, as well as the school's psychologist and speech pathologist.  (*See* Streiff Dep. 158–60; Streiff Decl. 3.)  After Skallos rejected three requests to meet with Streiff about A.S.'s education in late February and early March, Streiff brought her concerns to Teresa Sacchetti, Benfield's principal, who convened two meetings on the subject.  (*See* Streiff Dep. 103, 157–58; Streiff Decl. 4–5.)  Meanwhile, Streiff's professional relationship with Skallos, Linthicum, and other of her co-workers deteriorated.  (*See* Streiff Dep. 100–01; Streiff Aff. 5–6.)  Streiff told Sacchetti that she feared Skallos and Linthicum's neglect of her complaints concerning A.S., as well as their personal animosity toward her, were in retaliation for those complaints.  (*See* Streiff Aff. 5.)

On the evening of April 14, Streiff and Linthicum encountered one another in a Safeway supermarket.  (*See* Streiff Dep. 54–57; Streiff Aff. 7.)  The next morning, Linthicum described that encounter as harassing in a complaint to Sacchetti.  (*See* Opp. Mot. Summ. J., Ex. 6, Sacchetti Dep. 142, ECF No. 37-7; Mot. Summ. J., Ex. 3, Sacchetti Aff. 1–2, ECF No. 30-5.)  After speaking with Linthicum, Sacchetti called Streiff's home.  (*See* Sacchetti Dep. 154; Streiff Dep. 34.)  Refusing to speak with Streiff, Sacchetti told Streiff's husband that Streiff should not

report to work that day.  (*See* Streiff Dep. 34; Opp. Mot. Summ. J., Ex. 5, Vince Streiff Aff. 3,

ECF No. 3.)  Later that day, Sacchetti formally terminated Streiff's role as a lunch/recess

monitor.  (*See* Sacchetti Dep. 161.)  Several weeks later, Sacchetti determined that Streiff could

no longer serve as a substitute teacher at Benfield, (*see* Sacchetti Aff. 3), although she was free

to work at other schools operated by the Board, (*see* Bozzella Aff. 3).  Sacchetti explained that

she took those actions on the basis of Linthicum's complaint.  (*See* Sacchetti Aff. 3.)  That

complaint resonated in part because it was consistent with a similar complaint that Streiff had

harassed A.S.'s second grade teacher several years before.  (*See* Sacchetti Aff. 3.)

      The parties have completed discovery.  On the basis of that record, the Board now moves

for summary judgment.

## ANALYSIS

### I. Standard of Review

      Under Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if

the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added).  Whether a fact

is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at

247–48.  The court must view the evidence in the light most favorable to the nonmovant and

draw all reasonable inferences in his favor.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378 (2007);

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264,

283 (4th Cir. 2013).  At the same time, the court must not yield its obligation "to prevent

factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 779 (4th Cir. 1993)).

## II. Retaliation

The Rehabilitation Act prohibits programs receiving federal funds from discriminating against disabled persons. *See* 29 U.S.C. § 794(a). To evaluate alleged violations of that prohibition, the Rehabilitation Act incorporates by reference certain provisions of the ADA, including 42 U.S.C. § 12203. *See* 29 U.S.C. § 794(d). That provision, in turn, proscribes "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a). Streiff's twin claims of retaliation under the Rehabilitation Act and the ADA thus converge on a single inquiry.

Absent direct evidence of retaliation, a plaintiff may prove discrimination under the ADA or Rehabilitation Act via the familiar burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g., Rhoads v. FDIC*, 257 F.3d 373, 391–92 (4th Cir. 2001).

> Pursuant to this framework, a plaintiff first must make out a prima facie case of [retaliation]. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly [retaliatory] action. Finally, if the employer carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer "were not its true reasons, but were a pretext for [retaliation]."

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal citations omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "Importantly, '[a]lthough intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact'" remains with the plaintiff.

*Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (alterations in original) (quoting

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

**A. Streiff's Prima Facie Case**

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he

engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists

between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701

F.3d 143, 154 (4th Cir. 2012). The Board first challenges Streiff's ability to satisfy the second of

these elements, arguing that the actions of which she complains are not sufficiently adverse to

sustain her claims.[1] Streiff, in turn, asserts four varieties of adverse action that allegedly support

her prima facie case: (1) the termination of her position as a lunch/recess monitor; (2) the

prohibition on Streiff's assignment as a substitute teacher at Benfield; (3) the rude behavior of

Streiff's co-workers at Benfield; and (4) the Board's refusal to consider adequately Streiff's

complaints regarding her daughter's education. The record indicates that the latter two of these

four types of conduct do not constitute adverse actions. The court need not—and does not—

evaluate whether the former two categories of conduct qualify as adverse actions; even assuming

they do, Streiff has not rebutted the Board's legitimate, non-discriminatory reason for relieving

Streiff of her positions as lunch/recess monitor and substitute at Benfield, as explained in Part

II.B.[2]

---

[1] The Board does not assert that Streiff's advocacy on behalf of her daughter was so unreasonable as to fall outside the scope of conduct protected under the ADA's (and Rehabilitation Act's) anti-retaliation provision. *See, e.g.*, *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). The court thus does not evaluate the reasonableness of Streiff's advocacy.

[2] The Board asks the court to strike exhibits appended to Streiff's opposition, on the ground that they were submitted just after the filing deadline. The Board acknowledges that the delay was "seemingly harmless." (*See* Reply Opp. Mot. Summ. J. 2 n.1.) Streiff, in turn, moves for leave to file a surreply responding to the Board's argument. (ECF No. 40.) Streiff's motion will be granted and the Board's request will be denied. Streiff also moves to strike the Board's inclusion in its opposition of evidence allegedly inadmissible under Federal Rule of Evidence 408. (ECF No. 40). Because this memorandum does not rely on any confidential portion of the allegedly

In the context of Title VII's parallel provision against retaliation, *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006) ("*White*"), held that the prohibition "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." Instead, it applies to actions "harmful to the point that they could well dissuade a reasonable worker from" claiming her statutory entitlements. *Id.* Courts regularly apply *White* to ADA and Rehabilitation Act claims of wrongful retaliation to evaluate the materiality of allegedly adverse conduct. *See, e.g.*, *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 36–37 (1st Cir. 2011) (applying *White* to an ADA claim); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165–66 (D.C. Cir. 2010) (applying *White* to an ADA claim, reasoning that Title VII "contains anti-discrimination and anti-retaliation provisions that are indistinguishable from those of the ADA"); *Dones v. Donahoe*, 987 F. Supp. 2d 659, 671–72 (D. Md. 2013) (applying *White* to a Rehabilitation Act claim).

**i. Co-Worker's Rude Treatment:** Streiff describes as "unprofessional" or "hostile" her co-workers' conduct toward her, arguing it rises to the level of adverse action. (*See* Streiff Dep. 41.) Although the record reveals little about the content of this putatively inappropriate behavior, it does indicate that at least two co-workers refused to talk to Streiff, one co-worker slammed a door in Streiff's face, another screamed at her, and still others "shunned and ostracized her." (*See* Streiff Dep. 100–01; Streiff Aff. 5–6.)

That conduct does not bear the significance Streiff ascribes to it. Federal anti-discrimination law is not "'a general civility code for the American workplace.' An employee's decision to report discriminatory behavior cannot immunize that employee from those petty

---

inadmissible evidence, that motion will be denied as moot. The Board's motion to seal page 170 of exhibit 1 of its reply to Streiff's motion for summary judgment, (ECF No. 41), which the Streiff does not oppose, will be granted.

slights or minor annoyances that often take place at work and that all employees experience."
*White*, 548 U.S. at 68 (internal citations omitted) (quoting *Oncale v. Sandowner Offshore Servs.,
Inc.*, 523 U.S. 75, 80 (1998)).  For this reason, *Henry v. Milwaukee County*, 539 F.3d 573, 587
(7th Cir. 2008), sustained a district court's conclusion, after a bench trial, that "door slamming
by the head of shift" at a juvenile detention center was not materially adverse, even when
accompanied by a host of other hostile conduct.  Nor does the administration of "the silent
treatment" by co-workers amount to actionable retaliatory conduct in ordinary circumstances.
*See, e.g.*, *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010); *Recio v.
Creighton Univ.*, 521 F.3d 934, 940–41 (8th Cir. 2008).[3]  Even a supervisor yelling at a
supervisee often does not qualify as an adverse action.  *See Cepada v. Bd. of Educ. of Balt. Cnty.*,
974 F. Supp. 2d 772, 788 n.51 (D. Md. 2013).  *A fortiori*, a single incident in which a *co-
worker*—who lacks direct authority over the plaintiff—yells at a peer is still less likely to
constitute materially adverse action.  In short, the ostracism, door slamming, and even screaming
described by Streiff qualify as the sort of "petty slights, minor annoyances, and simple lack of
good manners" that usually, as here, would not deter employees from asserting statutory
entitlements.  *White*, 548 U.S. at 68.

　　**ii. Inadequate Consideration of Streiff's Complaints:**  As to the purported neglect of
Streiff's complaints regarding the school's assessment of her disabled daughter's educational
needs, it too is insufficiently material to qualify as an adverse action.  Streiff explains that school
officials initially refused to entertain her objections to the decision to discontinue A.S.'s IEP and
to replace it with an educational plan that lacked language services.  (*See* Streiff Dep. 83–84.)

---

[3] The deterrent effect of such social ostracism might be greater if an employee were regularly excluded from semi-social gatherings that double as professional forums, such as "a weekly training lunch that contributes significantly to the employee's professional advancement."  *White*, 548 U.S. at 69.  There is no evidence of anything of the sort here.

Beginning in late November, Skallos and Linthicum returned to Streiff notes she had written

those teachers regarding her daughter's educational needs.  (*See* Streiff Decl. 3.)  In January

2011, she spoke once with the school's speech pathologist about her concerns and twice with the

school's psychologist in subsequent months.  (*See* Streiff Dep. 158–60.)  Finally, in late February

and early March, Skallos rejected three of Streiff's requests to discuss A.S.'s education.  (*See*

Streiff Decl. 4; *see also* Streiff Dep. 157.)[4]  Two days after the last of those requests—and only

fifteen days after the first—Streiff brought her complaint to the school principal, Sacchetti, who

convened a meeting between Streiff and A.S.'s teachers at the end of that same week.  (*See*

Streiff Dep. 103, 158; Streiff Decl. 5.)  Streiff remained dissatisfied by the ensuing discussion,

(*see* Streiff Decl. 5), and a second, more formal meeting was held at the end of March, (*see*

Streiff Dep. 77–78; Streiff Decl. 5).  Again, Streiff was displeased with the school's response.

(*See* Streiff Decl. 7.)[5]

Streiff describes this pattern as neglectful, arguing that it amounts to adverse action.  But

the record contradicts her claim that the Board neglected her concerns, even assuming that such

---

[4] On this point, there is some tension between Streiff's deposition testimony and her subsequent affidavit. In her deposition, Streiff reported only one request for a meeting with Skallos, on February 18, although Streiff may not have listed *all* of the requests she submitted to Skallos. (*See* Streiff Dep. 157.)  In her affidavit, Streiff indicates that she or her husband followed that first request with two others on March 4 and March 5.  (*See* Streiff Dep. 4.) Under the so-called "sham affidavit" rule, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her previous own statement (by, say, filing a later affidavit that *flatly contradicts* that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (emphasis added).  "Application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." *Reyazuddin v. Montgomery Cnty., Md.*, 7 F. Supp. 3d 526, 543 (D. Md. 2014) (quoting *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 528 (D. Md. 2014)).  Where, as here, a subsequent affidavit does not flatly contradict a prior sworn statement, the court may consider it. *See, e.g., id.*  That conclusion in no way prejudices the Board; to the extent Streiff's claims are premised on the Board's neglect of her complaints, summary judgment will be granted for the Board, as explained below.

[5] Streiff also argues that the Board punished A.S. in retaliation for Streiff's advocacy, forcing that child to remain standing in line for five minutes longer than her classmates after A.S. was unable to produce some signed papers.  (*See* Streiff Decl. 5.)  Prescriptions on retaliatory conduct prohibit third-party reprisals, so long as those reprisals are sufficiently material to satisfy the *White* standard. *See Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011).  The comparatively mild discipline described here, however, falls far short of that standard.

neglect can sometimes support a prima facie case of retaliation.  *See Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 143–45, 149 (2d Cir. 2002).  Streiff was able to meet regularly with the school's staff regarding her daughter's need.  At most, a single teacher, Skallos, stonewalled her request for a meeting for slightly over two weeks.  As soon as Streiff appealed to the principal, however, that request was promptly granted.  And although Streiff argues that Skallos' and Linthicum's return of her notes constituted rejection of her concerns, nothing in the record indicates that those notes contained a request for some sort of meeting or that Skallos and Linthicum refused to read them.  (*See, e.g.*, Streiff Decl. 3.)  Certainly, Streiff did not immediately obtain the sort of accommodation for her child that she desired.  But that dissatisfaction does not constitute adverse action.[6]

In sum, then, Streiff does not offer evidence establishing that the animosity of her co-workers or the Board's alleged neglect of her complaints constituted adverse actions.  As to the remaining two categories of adverse actions she alleges—the Board's termination of her service as a lunch/recess monitor and its prohibition on her employment as a substitute teacher at Benfield—Streiff's retaliation claims premised on those actions fail for the reasons described below, even assuming that the Board's conduct qualified as adverse actions.

### B. Pretext

The Board argues that legitimate, non-discriminatory justifications supported its termination of Streiff as lunch/recess monitor and its limitation on her ability to substitute at Benfield.  On the Board's account, Streiff's confrontation with Skallos in the Safeway, combined

---

[6] To the extent Steiff  premises her retaliation claim on the Board's failure to give her what she wanted, it fails for want of any causal connection between the Board's substantive decision and Streiff's advocacy.  That is, Streiff cannot satisfy the third element of her prima facie case insofar as the record is barren of any evidence that the school refused to grant A.S. the accommodations Streiff sought because of Streiff's advocacy.  Moreover, Streiff appears to have successfully invoked the Board's administrative process to resolve her dispute with the Board over A.S.'s education; she settled those complaints via administrative mediation.  (*See* Reply Opp. Mot. Summ. J., Ex. 2, ECF No. 39-2.)

with previous complaints of similar harassment, justified her removal from Benfield.  Streiff, in

turn, labels that explanation pretextual, arguing that any alleged "harassment" was no more than

advocacy on behalf of her daughter.

The Board has successfully articulated a legitimate, non-discriminatory justification for

Streiff's removal from Benfield.  Its limited burden of production requires only that the Board

"clearly set forth, through the introduction of admissible evidence," an explanation of its action

that is "legally sufficient to justify a judgment for [the Board]."  *Burdine*, 450 U.S. at 255–56.  In

an affidavit, Sacchetti explains that she acted against Streiff on the basis of Linthicum's written

complaint.  (*See* Sacchetti Aff. 1.)  Specifically, Linthicum complained that she

> was confronted by [Streiff] in the aisle [of the Safeway], that [Streiff] grabbed her
> cart and would not let her pass, and that [Streiff] yelled at her over and over again.
> Ms. Linthicum also reported that later in the checkout line, [Streiff] again yelled
> at her, screaming, "you hurt anyone you can!  Is that why you became a teacher?"

(Sacchetti Aff. 1–2.)  That complaint worried Sacchetti because it was not Streiff's first

altercation with a Benfield teacher off school grounds.  Several years before, Sacchetti

had received a complaint from the second grade teacher of Streiff's daughter, Kim

Gambill, accusing Streiff of having "screamed and cursed at her in front of a [church]

pastor, threaten[ing] to have her fired, and . . . showing up uninvited at [the co-worker's]

classroom during the school day."  (Sacchetti Aff. 2.)  These incidents persuaded

Sacchetti that "it would be best with the hostile environment and the concerns of staff

that [Streiff] not sub at Benfield and she not return as a monitor."  (Sacchetti Dep. 154.)

That explanation is not discriminatory on its face.  "[W]hen an employer

articulates a reason for discharging the plaintiff not forbidden by law, it is not our

province to decide whether the reason was wise, fair, or even correct, ultimately, so long

10

as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1999) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)).

Streiff offers no evidence suggesting that Sacchetti's explanation for relieving Streiff of her duties was pretextual. Streiff first seeks to minimize the significance of her earlier confrontation with Gambill, emphasizing that Sacchetti had initially considered it a relatively minor problem. (*See* Sacchetti Dep. 146.) Yet, as Sacchetti indicated, that earlier incident took on new importance in light of Streiff's subsequent confrontation with Linthicum. (*See* Sacchetti Aff. 2.) Streiff proffers nothing that contradicts Sacchetti's testimony that she re-evaluated Gambill's complaint after hearing from Linthicum. And other evidence in the record indicates that Streiff's behavior was increasingly worrisome in the months leading up to her encounter with Linthicum. Apart from Streiff's out-of-school confrontations with Linthicum and Gambill, Sacchetti reported in her deposition several complaints about Streiff's conduct on school grounds. Skallos, for example, informed Sacchetti in an email that Streiff "was making negative comments in front of the students" and speaking with Skallos "aggressive[ly]" about A.S., even while on duty as a lunch/recess monitor. (Sacchetti Dep. 148–49.) One other school employee complained that Streiff sometimes "would stop her in the hallway" to talk while the employee was in the midst of other activities and another co-worker also reported unspecified concerns about Streiff's conduct. (Sacchetti Dep. 150–51.) Although Sacchetti did not rely on these in-school incidents when dismissing Streiff, they are probative of the reasonableness of Sacchetti's decision and thus undercut still further

Streiff's unsupported assertion that Sacchetti's explanation for that decision is pretextual.

Sacchetti next argues that Sacchetti's failure to investigate Linthicum's complaint is probative of pretext. As the Board emphasizes, however, Streiff was a temporary employee who was not protected by the procedural safeguards contained in its Employee Handbook. Those protections, which Streiff cannot claim, included an opportunity to confront accusations made against employees. (*See* Reply Opp. Mot. Summ. J. 6–7, ECF No. 39.) Although Sacchetti informed Streiff's husband over the telephone that the Board would investigate Streiff's conduct before taking any final action against her, that statement did not endow Streiff with procedural protections she would otherwise lack. Sacchetti's failure to afford Streiff a process to which she was not entitled does not suggest pretext.

Last, Streiff asserts that her confrontation with Linthicum at the Safeway concerned Linthicum's treatment of A.S. Yet Sacchetti believed that Streiff largely, if not exclusively, expressed personal disappointment with the deterioration of her friendship with Linthicum when the two co-workers encountered one another at the supermarket. (*See* Sacchetti Dep. 158.) The day following that encounter, Streiff wrote Sacchetti an email confirming Sacchetti's understanding of the incident. (*See* Mot. Summ. J., Ex. 4, Email from Streiff to Sacchetti (Apr. 15, 2011).) There, Streiff wrote that the encounter between her and Linthicum "had nothing to do with the school. There was no discussion about anything specific that happened inside of the walls of Benfield other than to say that she has treated me poorly as a personal friend." (Email from Streiff

to Sacchetti.)[7]  Although, the record does not indicate *when* Sacchetti read Streiff's email, the existence of that correspondence confirms that the only information immediately available to Sacchetti suggested that Streiff confronted Linthicum about their friendship, not A.S.'s education.

Sacchetti's response to Streiff's email further undermines Streiff's argument that her termination was pretextual.  In that response, Sacchetti urges Streiff to contact her directly, as necessary, "about your daughter's educational program."  (*See* Mot. Summ. J., Ex. 4, Email from Sacchetti to Streiff (Apr. 26, 2011).)  In other words, Sacchetti distinguished Streiff's role as advocate from her role as employee, and assured her that her termination would not affect the former.  Streiff's response confirms that understanding.  As she wrote Sacchetti, "Talking to you about problems with [my] child is certainly not an issue."  (*See* Mot. Summ. J., Ex. 4, Email from Streiff to Sacchetti (Apr. 26, 2011).)

At trial, Streiff would bear the burden of demonstrating that the Board's legitimate, non-discriminatory explanation of its conduct was pretextual.  *See, e.g.*, *Merritt*, 601 F.3d at 294.  As explained, Streiff offers no evidence with which she can carry that burden.  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (internal quotation marks omitted).  The Board's motion for summary judgment as to Streiff's claims premised on her termination as a lunch/recess

---

[7] Although Streiff disputes certain parts of Linthicum's description of what occurred in the Safeway—on which Sacchetti largely relied—Streiff admits that she raised her voice to Linthicum, asking her, "[D]id you really go into education to hurt people[?]."  (Streiff Dep. 56–57.)

monitor and prohibition from substituting at Benfield will thus be granted.[8]

## CONCLUSION

For the reasons stated above, the Board's motion for summary judgment will be granted. Streiff's motion for leave to file a surreply will be granted and her motion to serve requests for admission will be denied as moot.  The Board's motion, which Streiff does not oppose, to seal page 170 of exhibit one of its reply in support of summary judgment also will be granted.

A separate order follows.


December 18, 2014                                /S/
        Date                              Catherine C. Blake
                                          United States District Judge

---

[8] Because the court will grant the Board's motion on the ground that Streiff offers no proof of pretext, it need not reach the Board's alternative argument that she has failed to demonstrate a sufficient causal relationship between the Board's retaliatory motivation and the alleged adverse actions against her.